929 A.2d 169

**Marnitta KING**

v.

**STATE of Maryland.**

**No. 134, Sept. Term, 2006.**

Court of Appeals of Maryland.

July 31, 2007.

420

Antoini M. Jones, Riverdale, for appellant.

Brian S. Kleinbord, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen., on brief), for appellee.

Argued before BELL, C.J., RAKER, CATHELL *, HARRELL, BATTAGLIA, GREENE and ALAN M. WILNER, (Retired, Specially Assigned), JJ.

GREENE, J.

We are asked to consider whether a trial judge who elects not to summarily punish an attorney for direct contempt, pursuant to Maryland Rule 15–203, and instead issues a Show Cause Order and assigns a special prosecutor to prosecute the attorney for contempt, pursuant to Maryland Rule 15–204, may vacate the order initiating contempt proceedings and convert to contempt proceedings that are summary in nature.

---

* Cathell, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

We conclude that the trial judge erred and should have conducted proceedings consistent with Maryland Rules 15–204 and 15–205.

## I.

### Factual and Procedural Background

Petitioner, Marnitta King ("Ms. King"), was admitted to the Maryland Bar in December 2001, and, on May 1, 2006, was elected to the Town Council for the Town of Capitol Heights, Maryland. On June 7, 2006, Ms. King entered her appearance on behalf of Shawn Marcus Wooden in a criminal case in the Circuit Court for Charles County. Ms. King was notified by the Assignment Office of that court that Mr. Wooden's case was scheduled for trial on June 27, 2006. On June 27, the trial judge called the case and, although Mr. Wooden was present, Ms. King was not. The Assistant State's Attorney, Benjamin I. Evan, offered the following regarding Ms. King's whereabouts:

> [STATE'S ATTORNEY EVAN]: That was ... yes, Your Honor. I spoke with Ms. King approximately ... well, we've spoken about this case a number of times. About a week ago I received a call from Ms. King. She indicated to me she was going to request a continuance. She was going to be away on legislative duties. At that point....

With a jury panel waiting across the hallway, the trial judge asked his staff if they had any information regarding Ms. King's whereabouts:

> [THE COURT]: Um, hum. Perhaps my staff can shed some light. Mrs. Jones?
>
> [MRS. JONES]: She indicated that she is in Ocean City.
>
> [THE COURT]: Oh.
>
> [MRS. JONES]: In a legislative conference.
>
> [THE COURT]: And, what legislature is she a member of, to your knowledge?

[MRS. JONES]: She is council [wo]man for the city of Capitol Heights, according to this.

The Assistant State's Attorney added the following:

[STATE'S ATTORNEY EVAN]: Well, Your Honor, as far as the State is concerned, we would place in [sic] on the stet docket. That's the State's interest in this case. Beyond that, that if the Court feels it can't take the stet because of that, we'll have to g o see Judge N alley and have the case reset.

Displeased with proceeding without Ms. King, the court added the following:

[THE COURT]: And, even though it sounds like a very favorable disposition ... this is an old case in notice ... I am loathe to sever the attorney client relationship merely for the fact of moving a case. So why don't we take it up to Judge Nalley and then you can come back and tell me what happened. And, I will take the appropriate action dealing with someone who is not here.

Whereupon the proceeding was continued before the Honorable Robert C. Nalley. Judge Nalley, in deciding whether to reschedule the matter said in relevant part:

[JUDGE NALLEY]: Okay ... I just spoke to [the trial judge's] aide who told me that [his] position is that counsel needs to be present for that to ... for the Court to be party to that. I don't disagree. There is not in this file any ... any request of the Court for legislative continuance. I see from the record and [the trial judge's] aid, Ms. Jones, has confirmed that this date was cleared with the assignment office for this proceeding. I noticed that Marnitta King's appearance came in here on June the 7th. And, I reiterate there has been no request to the Court to reschedule this. One would think that as of June the 7th ... that's more than three weeks ago ... someone would have known about this kind of conference. I am forced, I suppose, to conclude that there is good cause in the legal, but no other sense, to reschedule this matter. I don't know what else to do in

light of this set of circumstances. So, I invite the State's Attorney to get a new date from the assignment office. After Judge Nalley concluded that there was good cause to reschedule the matter, the proceeding, nonetheless, continued in front of the trial judge. Although Ms. King's precise whereabouts were, at that time, unknown, Mr. Wooden wished to proceed without an attorney, and instead represented himself because he considered the State's offer of placing the case on the stet docket to be a favorable one.

The court was hesitant to go forward without Ms. King; however, the court eventually accepted a waiver of Mr. Wooden's right to an attorney and placed the charges against Mr. Wooden on the stet docket. At the conclusion of the matter, the court addressed Ms. King's failure to appear. The court said:

[THE COURT]: Okay. We'll make ... mark that disposition. Now, we have another matter in this case. Mr. Zafiropulos?

[ATTORNEY ZAFIROPULOS]: Yes Judge?

[THE COURT]: I'm going to appoint you special prosecutor. I'm issuing a contempt show cause for Ms. King.

The trial judge issued a Show Cause Order[1] on June 29, 2006, and docketed the contempt proceeding as a separate

---

1. The Show Cause Order issued by the court contained the following factual recitals, in addition to, directions to Ms. King to show cause why she should not be sanctioned for direct criminal contempt:

On March 24, 2006, Marnitta King, a member of the Maryland State Bar, entered her appearance in the case of *State of Maryland, v. Shawn Marcus Wooden,* [in the] Circuit Court for Charles County, Maryland, case number K 04–710, by filing a Motion to Recall Warrant and to Issue a Writ of Attachment. On June 7, 2006, the Respondent filed an Entry of Appearance as counsel for the defendant[,] Shawn Marcus Wooden. Also on June 7, 2006, the assignment office of this Court mailed a notice of trial to the Respondent. The notice stated that the Wooden case was set for a criminal jury trial on June 27, 2006, at 9:30 a.m. before the undersigned. On June 26, 2006, the assignment office and the jury commissioner attempted to ascertain from the Respondent whether a jury panel should be summoned for the Wooden case. A member of the Respondent's staff told the assignment office that the Respondent was in a "legislative conference all week" on the Eastern

shore of Maryland. The staff member further advised that the Respondent was only available by email and that she would attempt to contact her and get back to the assignment office with her response. The assignment office received no further communication from the Respondent's staff. During the late afternoon of June 26, 2006, the undersigned was contacted by the assignment office and the jury commissioner who explained that they were uncertain as to whether or not to summons a jury panel for the Wooden case because neither the Respondent nor her staff had gotten back to them as to whether a jury panel was needed. The undersigned then had a member of his staff telephone the Respondent's office to ascertain whether or not a jury panel was needed for the Wooden case. The Respondent's staff indicated that Ms. King was not available, that she was out of Prince George's county at a legislative conference and that [the staff] could not contact her. This staff member called back to chambers to find out how late the chambers would be open. She was told that the Judge would be here until 4:30 p.m. The message machine for chambers recorded a message from Ms. King at 5:03 p.m. Monday, June 26, 2006. This message said that Ms. King's client would be accepting the State's Attorney's offer to put the case on the "stet" docket. On the morning of June 26, 2006, when the Wooden case was called for trial, the Respondent failed to appear. Her client Mr. Wooden, informed the Court that he had talked to his attorney and that she had advised him to accept the State's Attorney's "stet" offer and that she would not be appearing on his behalf at that proceeding. The undersigned notes that a jury panel of 32 jurors had been summoned for the Wooden case.

When Mr. Wooden arrived in the courtroom, he requested that the case proceed without the Respondent representing him. The Court was reluctant to honor the defendant's request and the case was referred to the County Administrative Judge to rule on the issue of whether the case would be continued. The County Administrative Judge found good cause to continue the trial. The case was sent back to the undersigned's courtroom and Mr. Wooden explained that he was incarcerated in the Prince George's County Detention Center and that the pendency of the Charles County charges acted as a detainer and prevented him from obtaining bond in the Prince George's County case. Reluctantly, the Court permitted Mr. Wooden to proceed without counsel after conducting a waiver hearing. With Mr. Wooden proceeding pro se, the charges were placed on the "stet" docket. Thereafter the 32 member jury panel was dismissed.

The unjustified failure of an attorney to appear on [sic] court for trial at the appointed day and hour is a direct criminal contempt of Court. See *Murphy v. State of Maryland*, 46 Md.App. 138, 416 A.2d 748 (1980). Pursuant to Maryland Rules 15–204 and 15–205, the Court issues this Show Cause Order.

Upon consideration of the foregoing it is this 29th day of June, 2006, by the Circuit Court for Charles County, Maryland,

ORDERED that the respondent show cause, if any she has, why she should not be punished by confinement or fined for direct criminal contempt for failure to appear in Court for trial on June 27, 2006, on behalf of her client Shawn Marcus Wooden, provided a copy of this

proceeding, Criminal 06–426, *State v. Marnitta King.* Subsequently, on August 22, 2006, the court held a hearing on the Show Cause Order. The following colloquy between special prosecutor, Mr. Zafiropulos, defense counsel for Ms. King, Mr. Jones, and the court, details the court's attempt to determine the proper procedure the court should follow:

[MR. ZAFIROPULOS]: If the Court intends to act that way, summarily, then my role is limited. However, I will state this for the record: If the Court does not intend to act summarily, then I want to move to continue the case … [a]nd to be quite honest with you, if it's going to be a full blown jury trial, then I'm going to ask the Court to send this matter into the assignment office, because I don't believe under the case law that you, Judge, and take no offense from this, but could be [sic] the presiding judge in a jury trial.

[THE COURT]: Not at the jury trial, I would be a witness.

[MR. ZAFIROPULOS]: But be that as it may, you know, I leave it up to the Court as to whether it's going to proceed summarily or not.

[THE COURT]: Mr. Jones?

[MR. JONES]: My first question would be, given the fact that my client was put on notice of 15–204 and 15–205, I don't believe the Court can summarily go forward, because—

[THE COURT]: Well, I disagree.

[MR. JONES]: And I just—

[THE COURT]: She's not entitled to it, but, you know, as a courtesy, I could have just imposed sentence [in] absentia.

[MR. JONES]: Had she been put on notice of [sic] by the Court in its order

[THE COURT]: Um-hmm.

---

Order be served upon the Respondent on or before 11th day of July, 2006; and it is further

ORDERED that this matter be set for a hearing on the 3rd day of August, 2006, at 9:30 a.m. before the [trial judge].

[MR. JONES]: And by the document, the summons, is 204 and 205. And 204 specifically states in any proceeding involving a direct attempt by which the Court determines not to impose sanctions summarily, the judge promptly after the conduct shall issue a written order specifying the evidentiary hearing. But it says should the judge not intend. So, she's been put on notice by the Court's documents, its order and by which she was served, and that the Court does not intend to proceed summarily. And I would think, procedurally, it would be defective, or in my opinion may be improper for the Court to say, I changed my mind, now I'm going to proceed summarily, when she—

[THE COURT]: She is not entitled as a matter of right to have a hearing under the *Murphy* case.

[MR. JONES]: No, I agree with that; however, by the same token, if a Court issues an order telling the individual—

[THE COURT]: Then all I have to do is vacate the order. Right?

[MR. JONES]: And the Court proceed—if the Court's intent to proceed in that matter, that's fine; however, we would totally object to that and take that—

[THE COURT]: Your objection is noted, overruled.

The court then granted the State's request that the court take judicial notice of the court file in the underlying criminal case, *State v. Wooden*, case number K 04–710. Thereafter, the court found Ms. King in direct criminal contempt of court. The court then allowed Ms. King to testify. Ms. King testified that she was elected as a council member in the town of Capitol Heights on May 1, 2006. After entering her appearance on behalf of Mr. Wooden, Ms. King soon realized that the trial date conflicted with a legislative conference in Ocean City[2]. She further testified that she drafted a motion to

---

2. Ms. King's position as an elected member of the Town Council for the Town of Capitol Heights, Maryland did not qualify her for a legislative continuance available to members of the General Assembly, pursuant to

postpone the trial date and contacted the Assistant State's Attorney assigned to the case. Ms. King stated that she first spoke to the prosecutor two weeks before the trial date and that she was informed, at that time, that the State was considering a stet.

In light of the proposed disposition, Ms. King elected not to file for a continuance. According to her testimony, she visited Mr. Wooden in jail to relay the State's offer. Mr. Wooden indicated that he was interested in accepting the stet, and Ms. King then attempted to find a "stand-in" attorney to cover the court date for her. One week prior to trial, Ms. King called the prosecutor and told him that she had another attorney that was willing to stand in her place and accept the State's offer of placing the case on the stet docket.

Ms. King attended the conference in Ocean City. According to her testimony, on June 26, she learned that there was a storm nearing Prince George's County, and she contacted the court that afternoon. At that time she discovered that the court was attempting to contact her to determine whether the Wooden case would require a jury. Ms. King further testified that she was unfamiliar with the procedures of the Circuit Court for Charles County and did not understand that it was her responsibility to notify the court whether a jury was needed. The following morning, Ms. King was notified that the storm was causing flooding in Prince George's County, and that because of the weather conditions, her stand-in counsel would not be able to get to the Circuit Court for Charles County. Ms. King testified that she called the court the morning of June 27, leaving a voice mail message informing the court that she would not be able to attend the proceeding because of "an emergency session with the town, because of [the] flooding." At the conclusion of Ms. King's testimony, the court heard additional testimony from the Assistant State's Attorney assigned to the *Wooden* case.

---

Md.Code (2002 Repl.Vol.) Courts and Judicial Proceedings § 6–402. See also Maryland Rule 2–508(d).

At the close of evidence, the court stated that it did not find Ms. King to be a credible witness. The court concluded that Ms. King "deliberately, intentionally, declined to show up," and found her in direct criminal contempt. The court imposed a fine of $2,500 and stated that $480 of the fine would be used to defray the cost of the jury. The court also placed Ms. King on unsupervised probation for a period of two years, subject to the following conditions: obey all laws, pay the fine by February 21, 2007, and within one year, complete the MICPEL program dealing with professional conduct. The court offered Ms. King probation before judgment "under section 6–220 of the Criminal Procedure Article," which Ms. King rejected in order to preserve her right to appeal.

Thereafter, Ms. King filed a timely appeal to the Court of Special Appeals. On February 2, 2007, while the appeal was pending in the intermediate appellate court, this Court issued a writ of certiorari on its own initiative. *King v. State*, 397 Md. 107, 916 A.2d 256 (2007).

## II.

### Standard of Review

In *Johnson v. State*, 360 Md. 250, 757 A.2d 796 (2000), we stated that:

With respect to the interpretation of the Maryland Rules, . . . [t]he canons and principles which we follow in construing statutes apply equally to an interpretation of our rules. In order to effectuate the purpose and objectives of the rule, we look to its plain text. To prevent illogical or nonsensical interpretations of a rule, we analyze the rule in its entirety, rather than independently construing its subparts. If the words of the rule are plain and unambiguous, our inquiry ordinarily ceases and we need not venture outside the text of the rule.

The venerable plain meaning principle, central to our analysis, does not, however, mandate exclusion of other persuasive sources that lie outside the text of the rule. We have often noted that looking to relevant case law and appropri-

ate secondary authority enables us to place the rule in question in the proper context.

*Johnson,* 360 Md. at 264–65, 757 A.2d at 804 (citations and quotations omitted).

## III.

### Discussion

In this case, the State contends that "King's actions amounted to a direct criminal contempt for which King could be summarily sanctioned." The State argues that "it is the contemptuous act, not the form of the proceedings, which determines whether the contempt is direct or constructive." The State also argues that the court "could not impose sanctions on King on June 27, because King was not present in court" and "[t]hat the court deferred imposition of the sentence to a later date—and provided King an opportunity to provide evidence in mitigation—did not alter the nature of the offense." The State posits that "the record shows [the court] complied with the requirements of Rule 15–204" because "[t]he court issued a Show Cause Order two days after finding King in contempt of court." Lastly, the State points out that the instant case is distinguishable from *Smith v. State,* 382 Md. 329, 855 A.2d 339 (2004), because "the court here expressly followed all of the procedures set forth in . . . Rule 15–205" and therefore Marnitta King suffered no prejudice.

Ms. King concedes that "an attorney's failure to appear as scheduled for a trial, may constitute a direct contempt of court that the court may summarily adjudicate." According to Ms. King, "[t]he court in the instant case elected not to impose sanctions summarily and instead issued a Show Cause Order indicating that it was proceeding pursuant to Maryland Rules 15–204 and 15–205." Ms. King's argument follows that, after deciding not to proceed summarily and instead issuing a Show Cause Order and appointing a special prosecutor, the court was bound to follow the procedures proscribed in Rules 15–204 and 15–205. Ms. King posits that the court's later decision to proceed summarily was, therefore, improper. Lastly,

Ms. King contends that she was entitled to a full jury trial as well as an impartial judge.

■ Contempt proceedings are "[o]ne weapon in the court's arsenal [,] useful in defending its dignity." *State v. Roll and Scholl,* 267 Md. 714, 717, 298 A.2d 867, 870 (1973). As we noted in *Roll and Scholl,*

> [t]he history of contempt power is very old with roots stretching back to the early English monarchs and the common law. The power began as a means of assuring the efficiency and dignity of the sovereign, but it soon spread to protect representatives of the king. The contempt power of the courts had a similar origin in that the lord chancellor's authority was derived from the king. But, as the courts became more independent of the crown and their power increased, the authority to punish for contempt was carried with them. In time, it was so established that the power was considered inherent in the courts.

267 Md. at 726–27, 298 A.2d at 875. Contempt proceedings in Maryland are now governed by the Maryland Rules. *See* Maryland Rules §§ 15–201 through 15–208.

■ There exist two types of contempt: direct and constructive. A " '[d]irect contempt' means a contempt committed in the presence of the judge presiding in court or so near to the judge as to interrupt the court's proceedings." Md. R. 15–202(b). *See also Smith,* 382 Md. at 338, 855 A.2d at 344. Constructive contempt is "any contempt other than a direct contempt." Md. R. 15–202(a). *See also Smith,* 382 Md. at 338, 855 A.2d at 344; *In re Lee,* 170 Md. 43, 47, 183 A. 560, 562, *cert. denied* 298 U.S. 680, 56 S.Ct. 947, 80 L.Ed. 1400 (1936) ("Indirect or constructive contempts are those which do not occur in the presence of the court, or near it, ... but at some other place out of the presence of the court and beyond a place where the contempt would directly interfere with the proper functioning of the court."); *Dorsey v. State,* 356 Md. 324, 344, 739 A.2d 41, 52 (1999) (noting that constructive criminal contempt proceedings are treated "like other ...

actions with regard to the initiation of prosecution, waiver of counsel, waiver of jury trial, and bail").

Both direct and constructive contempt proceedings can be either civil or criminal in nature. "Civil contempt proceedings [are] 'intended to preserve and enforce the right of private parties to a suit and to compel obedience to orders and decrees primarily made to benefit such parties.'" *Archer v. State*, 383 Md. 329, 345, 859 A.2d 210, 219–20 (2004) (quoting *Roll and Scholl*, 267 Md. at 728, 298 A.2d at 876). On the other hand, "[c]riminal contempt . . . constitute[s] 'positive acts which offend the dignity or process of the court. Holding an offending party in contempt of court [is] designed to vindicate the authority and power of the court and punish disobedience to its order.'" *Archer*, 383 Md. at 345, 859 A.2d at 220 (quoting *Roll and Scholl*, 267 Md. at 727, 298 A.2d at 875). Consistently we have said that "[t]he primary purpose of punishment for criminal contempt, whether direct or constructive is vindication of public authority, embodied in the court and represented by the judge, by punishing the contemnor for past misconduct, not to compel future compliance or to remedy the harm." *Ashford v. State*, 358 Md. 552, 563, 750 A.2d 35, 41 (2000) (citations omitted). Nonetheless, "only that conduct that is willful or intentional may constitute a criminal contempt." *Ashford*, 358 Md. at 563, 750 A.2d at 41 (citations omitted).

Direct contempt may be summarily punished. *State v. Roll and Scholl*, 267 Md. at 732, 298 A.2d at 878; *see* Md. R. 15–203. This Court has said that "[t]he term 'summary' generally connotes an immediate action undertaken without following the usual formal procedures." *Smith v. State*, 394 Md. 184, 215, 905 A.2d 315, 333 (2006) (concluding that the proceedings conducted in the case, giving rise to charges of contempt, were not summary in nature because it lacked the hallmarks of summary proceedings. In the resolution of the underlying case, the court conducted an independently docketed proceeding in which the contemnor's attorney was permitted to present a mitigating argument and also the

court solicited sentencing recommendations from the State and the contemnor's counsel.). A summary contempt proceeding is considered the exceptional case. *State v. Roll and Scholl,* 267 Md. at 733, 298 A.2d at 878. In those cases where the conduct of the alleged contemnor poses an open, serious threat to orderly procedure that instant, and summary punishment, as distinguished from due and deliberate procedures, is necessary, direct contempt procedures are designed to fill the need for immediate vindication of the dignity of the court. *See Harris v. United States,* 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965). In *Kandel v. State,* 252 Md. 668, 672, 250 A.2d 853, 855 (1969), we held that an attorney's failure to punctually attend court is at least misbehavior on the part of an officer of the court and may amount to, and be punishable as, contempt. Further, we held that such a contempt can be punished summarily. *Id.*

 In the case *sub judice,* both parties agree that because of Ms. King's absence, the court could have found that Ms. King committed a direct criminal contempt and imposed sanctions summarily pursuant to Md. Rule 15–203.[3] *See Ash-*

---

**3.** We do not mean to imply that the court should have conducted contempt proceedings in Ms. King's absence. This Court has said on numerous occasions "that [a] trial in absentia is not favored and it 'should be the extraordinary case, "undertaken only after the exercise of a careful discretion by the trial court." ' " *Tweedy v. State,* 380 Md. 475, 494, 845 A.2d 1215, 1226 (2004) (citations omitted). See Maryland Rule 4–231 (implementing the right to be present at trial).

Furthermore, we do not suggest that Maryland Rule 15–203 permits a finding of wilfulness on the basis of hearsay evidence offered against the contemnor. Before the court could make a finding of wilfulness and direct contempt, there must be legally sufficient evidence that would be admissible in a criminal case to support those findings. Here, because Ms. King failed to appear, the trial judge had direct evidence that Ms. King was absent, but only hearsay statements as to why she was absent. Without more, the trial judge did not have sufficient evidence to make a finding of direct contempt at the time he issued the Show Cause Order on June 29, 2006. See *Dorsey v. State,* 356 Md. 324, 352, 739 A.2d 41, 56 (1999) (noting that the "mens rea element[ ] must be established by evidence, and cannot simply be 'assumed.' ")

The evidence offered against the contemnor, including any evidence regarding the willfulness of the contemnors conduct, must establish

*ford,* 358 Md. at 564, 750 A.2d at 41 (2000) (noting that "[a] direct contempt, such as failure to appear, or disruptive conduct in the courtroom, may be summarily punished after such hearing as the presiding judge may deem just and necessary") (citations omitted). Specifically, Ms. King's failure to attend court on June 27, 2006, as well as her failure to notify the Assignment Office that jurors were not needed, resulted in an unnecessary disruption of the court's business and, constituted a contempt of court, provided her actions were not justified and wilful.

The state contends "[t]hat the court [chose to] defer[ ] imposition of the sentence to a later date—and provided King an opportunity to provide evidence in mitigation" and that "[t]he only basis for further proceedings was to provide King

---

that party's guilt beyond a reasonable doubt. See *Ruffin v. State,* 394 Md. 355, 363, 906 A.2d 360 (2006) (noting that the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights guarantee that a criminal defendant shall only be convicted upon proof beyond a reasonable doubt.) It is the exceptional case where an attorney fails to appear for a scheduled court proceeding, and that court receives sufficient evidence, at that moment, to establish the attorney's willfulness such that it may summarily find that attorney in contempt of court.

As indicated previously, where an attorney fails to appear, during the course of court proceedings, the trial judge ordinarily will not know all the relevant facts surrounding the alleged unjustified failure to appear. Thus, the better practice would be for the court to proceed with caution. The situation in *Hermina v. Baltimore Life Ins. Co.,* 128 Md.App. 568, 739 A.2d 893 (1999), is instructive. As suggested by the intermediate appellate court in *Hermina,* in the instant case, the trial judge could have issued a bench warrant to have Ms. King brought before the court forthwith, if possible, for a summary contempt proceeding. He chose, however, not to do so and concluded the underlying criminal case by entering Mr. Wooden's stet on the record.

In *Jones v. State,* 61 Md.App. 94, 484 A.2d 1050 (1984), the intermediate appellate court held that a defendant's failure to timely appear for a court proceeding resulted in an inconvenience to the trial court but not an interruption of the court's business and therefore was not a direct criminal contempt. The offended court should, at all times, remain ever mindful of the distinction noted in *Jones.* We note that "while trial judges must be given wide latitude to punish contemptuous conduct, they must ever be on guard against confusing offenses to their sensibilities with obstructions to the administration of justice." *Muskus v. State,* 14 Md.App. 348, 361–62, 286 A.2d 783, 790 (1972).

an opportunity to provide evidence in mitigation." Similarly, the State points out that "[t]he court issued a Show Cause Order two days *after* finding King in contempt of court." (Emphasis added.) This argument implies that the trial judge initiated contempt proceedings on June 27, 2006, and found Ms. King in contempt and intended to impose sanctions summarily, at a later date. That, however, did not occur. If that had happened, consistent with the requirements of Rule 15–203, the trial judge was required to "summarily find[ ] and announce[ ] on the record that direct contempt ha[d] been committed," then defer imposition of sanctions until the close of the proceedings during which the contempt had been committed. *See* Md. R. 15–503(a). As noted *supra,* the court did not announce on the record that a direct contempt had been committed. At no time on June 27 did the judge indicate that he was proceeding under the requirements of Rule 15–203. To the contrary, to the extent that the judge addressed Ms. King's failure to appear, he said the following:

[THE COURT]: Okay. We'll make ... mark that disposition. Now, we have another matter in this case. Mr. Zafiropulos?

[ATTORNEY ZAFIROPULOS]: Yes Judge?

[THE COURT]: I'm going to appoint you special prosecutor. I'm issuing a contempt show cause for Ms. King.

Furthermore, the language contained in the Show Cause Order, specifically states that the Order was being issued "[p]ursuant to Maryland Rules 15–204 an d 15–205." By reference to Rules 15–204 and 205, the court indicated that it was going to hold a proceeding for constructive criminal contempt; it was not until that proceeding began that the court chose to proceed summarily. Consistent with the procedure contemplated by the Show Cause Order, the trial judge separately docketed the new proceeding, as Criminal case No. 06–426 and designated a special prosecutor to try the case. We conclude, therefore, that the judge's actions were consistent with the requirements of Rule 15–204, not the requirements of Rule 15–203.

As noted *supra,* the court initially chose not to summarily impose sanctions as proscribed by Rule 15–203. Moreover, because he did not bring Ms. King before him forthwith for summary contempt proceedings, or adjudicate her in contempt as part of the underlying case, the court could not summarily sanction her after initiating a new proceeding. By choosing not to initiate summary proceedings, the court elected to follow Rule 15–204.[4] This rule "covers [those] situations in which a direct contempt is not summarily sanctioned." *Hermina v. Baltimore Life Ins. Co.,* 128 Md.App. 568, 585, 739 A.2d 893, 902 (1999).

The State contends, and the record supports the conclusion, that the court relied on a decision of the Court of Special Appeals, *Murphy v. State,* 46 Md.App. 138, 416 A.2d 748 (1980), as a guidepost in adjudicating Ms. King in contempt of court. The court maintained that, pursuant to *Murphy,* it could permissibly issue a Show Cause Order, separately docket that proceeding, assign a special prosecutor and, at a later date, proceed summarily against Ms. King.

The factual circumstances in *Murphy* are similar to those in the instant case. In *Murphy,* an attorney "was charged with direct contempt of court in the Circuit Court for Dorchester County for failure to appear in that court as defense counsel in two criminal trials scheduled for September 6, 1979." *Murphy,* 46 Md.App. at 139, 416 A.2d at 749. Because the attorney failed to appear, the Circuit Court issued a Show Cause Order on September 14, 1979, ordering Mr. Murphy to "show cause why he should not be held in contempt of court." *Murphy,* 46 Md.App. at 141, 416 A.2d at 751. "In the Order, [the Circuit Court] stated that although a direct contempt may

---

**4.** Maryland Rule 15–204 provides:

In any proceeding involving a direct contempt for which the court determines not to impose sanctions summarily, the judge, reasonably promptly after the conduct, shall issue a written order specifying the evidentiary facts within the personal knowledge of the judge as to the conduct constituting the contempt and the identity of the contemnor. Thereafter, the proceeding shall be conducted pursuant to Rule 15–205 or Rule 15–206.

be summarily punished pursuant to Md. Rule P 3(a), [the trial judge] wished 'to preserve [Mr. Murphy's] right to due process and to therefore give him an opportunity to show cause why he should not be held in contempt' [of court]." *Murphy,* 46 Md.App. at 141, 416 A.2d at 751. Following a hearing, the Circuit Court found Mr. Murphy in contempt.

On appeal, Murphy argued, *inter alia,* "that his behavior was, at most, a constructive contempt that must be proceeded against within the strictures of Md. Rule P4." *Murphy,* 46 Md.App. at 145, 416 A.2d at 752. The intermediate appellate court rejected Murphy's argument, holding that "an attorney's unjustified failure to appear or to give reasonable notice thereof is a contempt committed in the presence of the court and, therefore punishable summarily under Md. Rule P3." *Murphy,* 46 Md.App. at 149, 416 A.2d at 755. In addition, the intermediate appellate court reasoned that "[in] jurisdictions [that] have held that the absence of an attorney from court does not occur 'within the presence of the court[,]' [was because those] courts were chiefly concerned that the contemnor be afforded due process in the form of an opportunity to explain his absence." *Murphy,* 46 Md.App. at 149–50, 416 A.2d at 755. The Court of Special appeals further explained that Murphy "was given sufficient time to prepare his defense and an opportunity to present it," even though the court was not required to do so in a case of direct contempt. *Murphy,* 46 Md.App. at 150, 416 A.2d at 755.

While the factual circumstances in *Murphy* are similar to the instant case, that case was decided pursuant to former Rules P3 and P4. Ms. King concedes that her actions could have been punished as a direct contempt. The issue before us, however, is whether the trial judge could summarily sanction Ms. King under the current Rules of Procedure because as *Murphy* pointed out "the mere provision of a hearing d[oes] not transform [a] direct contempt into a constructive [contempt]." *Murphy,* 46 Md.App. at 150, 416 A.2d at 755. In other words, we must decide whether *Murphy* is still good law in view of this Court's revisions to the Contempt Rules in 1996, sixteen years after *Murphy* was decided.

At the time *Murphy* was decided, direct contempt proceedings were governed by Maryland Rule P3. That Rule provided:

a. A direct contempt may be punished summarily by the court against which the contempt was committed. b. Where a direct contempt is committed, the court shall sign a written order to that effect. The order shall recite the facts, be signed by the judge and entered of record. The order shall state which of the facts were known to the court of its own knowledge and as to any facts not so known, the basis for the court's finding with respect thereto. c. The record in such cases shall consist of (1) such order of contempt, (2) any affidavit filed by the defendant, (3) any affidavit filed by the State's attorney in support of the order of contempt, if the court directed him to investigate or prosecute the contempt, and (4) any testimony offered.

Constructive contempt was governed by Maryland Rule P4. Rule P4 provided:

a. Constructive contempt proceedings may be instituted by the court of its own motion, by the State's attorney or by any person having actual knowledge of the alleged contempt. b. 1. Show Cause Order (a) Issuance. If the court determines to cite the defendant for contempt, it shall issue an order requiring the defendant to show cause why an order adjudging him in contempt shall not be passed within the time stated therein. (b) Contents. The show cause order shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the contempt charged. (c) Service. The show cause order shall be served upon the defendant pursuant to Rule 104 (Service of Process—Generally) unless the defendant has appeared as a party in the action in which the contempt is charged, in which case service shall be in the manner prescribed by the court. 2. Written Statement. A copy of any writing or document filed in support of the alleged contempt shall also be served upon the defendant. c. If the defendant shall answer, the charge shall be set for hearing. If no cause be shown

within the time named in the order, the case shall be heard *ex parte.* d. 1. Appointment of Prosecutor. The court may designate the State's attorney or any other member of the bar to prosecute the proceeding. 2. When Judge Disqualified. Unless a defendant otherwise consents, the judge who issued a citation for constructive contempt shall be disqualified from presiding at the hearing except where such contempt consists of failure to obey an order or judgment in a civil case.

The Court of Appeals, by Order dated June 5, 1996, effective January 1, 1997 rescinded, *inter alia,* Subtitle P of Chapter 1100 of the Maryland Rules of Procedure. Currently, direct civil and criminal contempt proceedings are governed by Maryland Rule 15–203. Rule 15–203 provides in pertinent part:

(a) Summary Imposition of Sanctions. The court against which a direct civil or criminal contempt has been committed may impose sanctions on the person who committed it summarily if (1) the presiding judge has personally seen, heard, or otherwise directly perceived the conduct constituting the contempt and has personal knowledge of the identity of the person committing it, and (2) the contempt has interrupted the order of the court and interfered with the dignified conduct of the court's business. The court shall afford the alleged contemnor an opportunity, consistent with the circumstances then existing, to present exculpatory or mitigating information. If the court summarily finds and announces on the record that direct contempt has been committed, the court may defer imposition of sanctions until the conclusion of the proceeding during which the contempt was committed.

Maryland Rule 15–204, which forms the crux of this case, provides:

In any proceeding involving a direct contempt for which the court determines not to impose sanctions summarily, the judge, reasonably promptly after the conduct, shall issue a written order specifying the evidentiary facts within the personal knowledge of the judge as to the conduct constitut-

ing the contempt and the identity of the contemnor. Thereafter, the proceeding shall be conducted pursuant to Rule 15–205 [5] or Rule 15–206,[6] whichever is applicable, and Rule 15–207 [7] in the same manner as a constructive contempt.

---

5. Maryland Rule 15–205 provides:
 (a) Separate action. A proceeding for constructive criminal contempt shall be docketed as a separate criminal action. It shall not be included in any action in which the alleged contempt occurred. (b) Who may institute. (1) The court may initiate a proceeding for constructive criminal contempt by filing an order directing the issuance of a summons or warrant pursuant to Rule 4–212.(2) The State's Attorney may initiate a proceeding for constructive criminal contempt committed against a trial court sitting within the county in which the State's Attorney holds office by filing a petition with that court. (3) The Attorney General may initiate a proceeding for constructive criminal contempt committed (A) against the Court of Appeals or the Court of Special Appeals, or (B) against a trial court when the Attorney General is exercising the authority vested in the Attorney General by Maryland Constitution, Art. V, § 3, by filing a petition with the court against which the contempt was allegedly committed. (4) The State Prosecutor may initiate a proceeding for constructive criminal contempt committed against a court when the State Prosecutor is exercising the authority vested in the State Prosecutor by Code, State Government Article, § 9–1201 et seq., by filing a petition with the court against which the contempt was allegedly committed. (5) The court or any person with actual knowledge of the facts constituting a constructive criminal contempt may request the State's Attorney, the Attorney General, or the State Prosecutor, as appropriate, to file a petition. (c) Appointment of prosecutor. If the proceeding is commenced by a court on its own initiative, the court may appoint the State's Attorney of the county in which the court sits, the Attorney General, or the State Prosecutor to prosecute the charge. (d) Contents; service. An order filed by the court pursuant to section (b)(1) of this Rule and a petition filed by the State's Attorney, the Attorney General, or the State Prosecutor shall contain the information required by Rule 4–202(a). The order or petition shall be served, along with a summons or warrant, in the manner specified in Rule 4–212 or, if the proceeding is in the Court of Appeals or Court of Special Appeals, in the manner directed by that court. (e) Waiver of counsel. The provisions of Rule 4–215 apply to constructive criminal contempt proceedings. (f) Jury trial. The provisions of Rule 4–246 apply to constructive criminal contempt proceedings.

6. Maryland Rule 15–206 covers proceedings involving constructive civil contempt.

7. Maryland Rule 15–207 primarily covers consolidation of criminal and civil contempt cases.

Former Rule P3 provided that a direct contempt may be punished summarily by the court. The Rule was silent as to whether the court should impose sanctions immediately after the contumacious conduct was committed, or, whether the punishment for the conduct could occur at a later time. Presumably, the court against which a direct contempt was committed could have imposed sanctions summarily, during that proceeding, immediately after the proceeding, or at some later date as in *Murphy*. In contradistinction to Rule P3, the current Maryland Rules, 15–203 and 15–204 make the procedure for the punishment of direct contempt clear, to the extent, that if a direct contempt is not summarily sanctioned, the direct contempt proceeding shall be conducted like a constructive contempt proceeding. *See* Md. Rule 15–204.

Specifically, Rule 15–203 is distinguishable from Rule P3 in that, following a direct contempt, the court may defer the imposition of sanctions until the conclusion of the proceeding during which the contempt was committed, *only if* the court "summarily finds and announces on the record that direct contempt has been committed." The plain language of the rule contemplates that summary imposition of sanctions should occur contemporaneously with the proceeding in which the direct contempt occurred. This is further reinforced by the plain language of Rule 15–204 which mandates that when the court does not impose sanctions summarily, the proceeding *shall* be conducted pursuant to Rule 15–205 or Rule 15–206 and 15–207. In other words, Rule 15–204 requires that the direct contempt shall be treated like a constructive contempt for purposes of adjudication and disposition. The former rules did not specify how a direct contempt should be treated if the court determined not to impose sanctions summarily. Thus, we conclude that if *Murphy* had been decided under the current rules, that court would have been required to follow Rule 15–204 and hold that summary contempt proceedings were improper because the trial court, initially, determined not to impose sanctions summarily. Therefore, the court's reliance on *Murphy* was misplaced.[8] Because he did not

---

8. In the present case because the underlying criminal case was terminated, summary imposition of sanctions was inappropriate. We are of

summarily impose sanctions for King's direct criminal contempt, Maryland Rule 15–204 governed the procedure for adjudication of the direct contempt and the imposition of sanctions.

In addition to citing *Murphy*, the State also cites the committee note to Rule 15–203. The committee note suggests a scenario entirely different than that which occurred in this case. The committee note provides:

> Sanctions may be imposed immediately upon the finding of the contempt, or, in the court's discretion, may be deferred to a later time in the proceeding. Deferral of a sanction does not affect its summary nature. The sanction remains summary in nature in that no hearing is required; the court simply announces and imposes the sanction.

The committee note is applicable in a situation in which the court finds the contemnor guilty of direct contempt, but chooses to impose a sanction later in that proceeding. *See e.g., Mitchell v. State*, 320 Md. 756, 580 A.2d 196 (1990) (in which the court summarily imposed sanctions for Mitchell's contempt during his sentencing proceeding immediately after imposing the sentence for the underlying crime). The rule does "contemplate a deferral of sanctions" as suggested by the State; however, it plainly contemplates that the deferral results after a *de minimis* passage of time. Specifically, the court may defer the imposition of sanctions until the conclusion of the underlying proceeding. The imposition of sanctions weeks after the contumacious conduct ignores the purpose for which sanctions are imposed summarily, i.e., to vindicate the court so that "a court ... [will] not be at the mercy of the obstreperous and uncouth." R. Goldfarb, *The*

---

the view that *Hermina*, 128 Md.App. at 585, 739 A.2d at 902 (holding that "since the court postponed the trial because the defendant's attorney was absent, there was no need or reason for a summary proceeding to restore order and maintain the dignity of the court") is more in accord with recent pronouncements of this Court than *Murphy*, *supra*. *See Smith v. State*, 394 Md. 184, 215, 905 A.2d 315, 333 (2006) (noting that contempt procedures that were not immediate but were independently docketed proceedings in which to impose sanctions was "inconsistent with the concept of summary proceedings").

*Contempt Power* 306 Columbia University Press (1963). We caution, however, that "[t]he power to immediately and summarily hold a person in contempt is awesome and abuses of it must be guarded against." *Roll and Scholl*, 267 Md. at 732, 298 A.2d at 878. (Citations omitted.)

Our discussion in *Smith*, 394 Md. 184, 905 A.2d 315 is instructive. In *Smith* the issue before the court, *inter alia*, was "whether Maryland Rule 15–204 applies where a court promptly finds that direct contempt has been committed, but declines to impose sanctions until a separately docketed hearing after the conclusion of the proceeding during which the contempt allegedly was committed." *Smith*, 394 Md. at 197, 905 A.2d at 323. Jeffery Smith was called to testify as a prosecution witness, in a case, in the Circuit Court for Baltimore City. Smith refused to testify. The trial court announced that "Mr. Smith refuse[d] to answer the questions properly put to him by the State [and that Smith's] contempt ... interrupted the order of the Court ... and, therefore, [that] the Court [found] him guilty of contempt beyond a reasonable doubt." *Smith*, 394 Md. at 195, 905 A.2d at 321–22. Two days after the conclusion of the case, the same judge conducted a separately docketed hearing and sentenced Smith to five months for direct criminal contempt.

On appeal, Smith argued that "because the sanction was meted out in a separately docketed proceeding, it [could not have been] considered to have been imposed summarily and as such, the trial judge's actions did not comply with the appropriate Maryland Rules." *Smith*, 394 Md. at 214, 905 A.2d at 332. This Court agreed with Smith, concluding that "[t]he procedures implemented in [that case] were neither immediate nor without the usual formalities of a hearing" and that "[t]he fact that the court held an independently docketed proceeding in which to dispense sanctions is entirely inconsistent with the concept of summary proceedings." *Smith*, 394 Md. at 215, 905 A.2d at 333. In that case, the court permitted Smith's attorney to present an argument in mitigation and solicited sentencing recommendations from both parties, and therefore the proceeding "lack[ed] the hallmarks of summary imposition of

sanctions under Maryland Rule 15–203(a)." *Smith,* 394 Md. at 215, 905 A.2d at 333. We held, therefore, that "[b]ecause the trial judge did not summarily impose sanctions for Smith's direct criminal contempt, Maryland Rule 15–204 govern[ed] the imposition of sanctions." *Id.*

The State contends that *Smith* is distinguishable "because the court here expressly followed all of the required procedures set forth in the Rules 15–205." We disagree. In the case *sub judice,* the court commenced and should have continued to follow the procedure set forth in Rule 15–204. As such, the court, "reasonably promptly" after Ms. King's conduct, issued a "written order specifying the evidentiary facts" within his personal knowledge as to the conduct constituting the contempt and also identified Ms. King as the individual involved. *See* Md. R. 15–204. Thereafter, pursuant to that Rule, the court should have conducted a proceeding pursuant to Rule 15–205. Although the court complied with Rule 15–205 when it appointed an Assistant State's Attorney to prosecute the contempt proceeding, and also when it issued a Show Cause Order, it nonetheless failed to satisfy all of the strictures of the Rule. Specifically, as the State concedes, Ms. King was not afforded a trial by jury. As a prerequisite to waiver of a jury trial, and in accordance with Md. Rule 4–246,[9] the court was required to conduct a waiver inquiry. In addition,

---

**9.** Maryland Rule 4–246 provides:
(a) Generally. In the circuit court a defendant having a right to trial by jury shall be tried by a jury unless the right is waived pursuant to section (b) of this Rule. If the waiver is accepted by the court, the State may not elect a trial by jury.
(b) Procedure for Acceptance of Waiver. A defendant may waive the right to a trial by jury at any time before the commencement of trial. The court may not accept the waiver until it determines, after an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that the waiver is made knowingly an d voluntarily.
(c) Withdrawal of a Waiver. After accepting a waiver of jury trial, the court may permit the defendant to withdraw the waiver only on motion made before trial and for good cause shown. In determining whether to allow a withdrawal of the waiver, the court may consider the extent, if any, to which trial would be delayed by the withdrawal.

because of the nature of the proceedings, Ms. King was entitled to all the constitutional safeguards applicable to a defendant in a constructive criminal contempt proceeding. *Roll and Scholl,* 267 Md. at 731 n. 12, 298 A.2d at 877 n. 12; *Dorsey,* 356 Md. at 343–44, 739 A.2d at 51–52 (noting that a constructive criminal contempt has the characteristics of any other criminal case, including prosecution, waiver of counsel, waiver of jury and bail).

Pursuant to the plain language of Rule 15–203,[10] the court against which a direct contempt is committed can punish that contempt summarily at the time it is committed or immediately after that proceeding. When the court chooses not to summarily punish the contemnor, it foregoes its opportunity to proceed summarily. Proceeding summarily at a later date, in effect, circumvents compliance with Maryland Rules 15–204 and 15–205 and, therefore, is improper. Accordingly, we hold that the trial judge, in the present case, erred in imposing sanctions summarily in violation of the procedures delineated in Maryland Rules 15–204 and 15–205.

**JUDGMENT OF THE CIRCUIT COURT OF CHARLES COUNTY REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS IN THIS COURT TO BE PAID BY CHARLES COUNTY.**

---

**10.** In *Stewart v. State,* 334 Md. 213, 215–16, 638 A.2d 754, 755 (1994), we held that "the Maryland Rules of Procedure 'are not guides to the practice of law but precise rubrics "established to promote the orderly and efficient administration of justice and [that they] are to be read and followed" ' " (citation omitted). *See also Jones v. State,* 379 Md. 704, 741, 843 A.2d 778, 800 (2004); *Chambers v. State,* 337 Md. 44, 58–59, 650 A.2d 727, 734 (1994); *Goins v. State,* 293 Md. 97, 109, 442 A.2d 550, 556 (1982); *State v. Ricketts,* 290 Md. 287, 292, 429 A.2d 1025, 1027–28 (1981); *Countess v. State,* 286 Md. 444, 463, 408 A.2d 1302, 1311 (1979); *King v. State Roads Comm'n,* 284 Md. 368, 371–72, 396 A.2d 267, 269 (1979); *Robinson v. Bd. of County Com'rs for Prince George's County,* 262 Md. 342, 346, 278 A.2d 71, 73 (1971); *Isen v. Phoenix Assurance Co.,* 259 Md. 564, 570, 270 A.2d 476, 479 (1970).