993 A.2d 39

Norman C. USIAK

v.

STATE of Maryland.

No. 75, Sept. Term, 2009.

Court of Appeals of Maryland.

April 15, 2010.

Paul Victor Jorgensen of Middletown, MD (Norman C. Usiak of Frederick, MD) on brief for Petitioner.

Kendra Y. Ausby, Assistant Attorney General (Douglas F. Gansler, Attorney General of Maryland, of Baltimore, MD) on brief for Respondent.

Argued before BELL, C.J., and HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

HARRELL, J.

A judge of the District Court of Maryland, sitting in Frederick County, entered an order finding Norman C. Usiak, Esquire, in direct contempt. Usiak appealed to the Circuit Court for Frederick County, which vacated the order and remanded the matter to the District Court on the basis that the initial order failed to comply with the mandates of Maryland Rule 15–203. The District Court, almost three months after its initial defective order, entered a corrected order and Usiak again appealed to the Circuit Court. The Circuit Court, finding that Usiak's conduct constituted contempt, affirmed the order. For the reasons that follow, we reverse the judgment of the Circuit Court and remand with directions to

vacate the corrected order of contempt and dismiss the contempt action. The Circuit Court erred in affirming the second contempt order.

## FACTS [1]

On 15 May 2008, Usiak appeared in the District Court of Maryland, sitting in Frederick County, as defense counsel for Ruben Paz–Rubio, who was scheduled to go to trial that day on a criminal charge of driving without a license.[2] When the case was called for trial, Usiak, with the acquiescence of the prosecutor, requested a continuance. The court denied the continuance request, but agreed to "pass" the case until later in the day. When the case was called again, the Assistant State's Attorney moved to place the case on the stet docket[3]

---

**1.** Because our resolution of this case generates a narrow holding regarding procedural aspects of the matter, we shall set out only a truncated version of the facts that are germane to the holding.

**2.** Section 16–101(a) of the Transportation Article provides that a person may not operate a motor vehicle on any highway of this State unless they hold a driver's license or are exempt under Title 16 of the Transportation Article. Md.Code, Transp. § 16–101(a) (1977, 2009 Repl.Vol.). Section 16–102(c) provides that any individual who drives in this State without a Maryland driver's license or an exemption is guilty of a misdemeanor. Section 27–101(a)–(b) provides that a violation of the Maryland Vehicle Law is a misdemeanor and any person convicted of a misdemeanor violation of the Maryland Vehicle Law is subject to a fine of not more than $500.

**3.** Rule 4–248 governs the disposition of a criminal charge by stet. The Rule provides:

(a) Disposition by stet. On *motion* of the State's Attorney, the court *may* indefinitely postpone trial of a charge by marking the charge "stet" on the docket. The defendant need not be present when a charge is stetted but in that event the clerk shall send notice of the stet to the defendant, if the defendant's whereabouts are known, and to the defendant's attorney of record. A charge may not be stetted over the objection of the defendant. A stetted charge may be rescheduled for trial at the request of either party within one year and thereafter only by order of court for good cause shown.
(b) Effect of stet. When a charge is stetted, the clerk shall take the action necessary to recall or revoke any outstanding warrant or detainer that could lead to the arrest or detention of the defendant

"based on some evidentiary problems in th[e] case. . . ." The court inquired why the State wished to stet the case. Usiak, apparently believing that the court had no authority or discretion other than to grant the State's motion, interrupted the colloquy between the court and the prosecutor. The following ensued between the court, the prosecutor, and Usiak:

MR. USIAK: We have no objections to [a stet] being entered, Your Honor. If we may be excused?

COURT: No, you may not. This case is being heard Mr. Usiak. I'm asking the Prosecutor a question.

MR. USIAK: I object to the question, Your Honor.

COURT: Well you can object if you want—

MR. USIAK: According to the Rule [4–248], I believe it's, I believe it's a decision by the Prosecutor—

COURT: I think it's a decision by the Court—

MR. USIAK: To enter a stet—

COURT: To grant the stet, it's a motion.[4]

MR. USIAK: Not when it's not objected to by the defense, Your Honor.[5]

COURT: No, Mr. Usiak, you are wrong.

MR. USIAK: No.

COURT: Mr. State?

[PROSECUTOR]: Your Honor it would be based on the stop in this case. It's an interesting set of facts—

MR. USIAK: If we may be excused, Your Honor?

COURT: No, Mr. Usiak, this case is being heard.

MR. USIAK: I mean no disrespect to you.

COURT: Well, you're being disrespectful.

---

because of the charge, unless the court orders that any warrant or detainer shall remain outstanding.
(Emphasis supplied).

4. The judge's recollection of what the Rule provides was correct. *See supra* note 3.

5. Usiak's view of what Rule 4–248 contemplates was wrong.

MR. USIAK: Well, I don't mean to be.

COURT: We are not concluded yet, Mr. Usiak.

MR. USIAK: I am Your Honor and I believe that the State—

COURT: Mr. Usiak, the—

MR. USIAK: By making the motion—

COURT: And the Court is not—

MR. USIAK: Has concluded the case.

COURT: Has not ruled, Mr. Usiak. You're being rude and disrespectful.

MR. USIAK: I don't mean to be disrespectful, but I don't believe it's the Court's providence—

COURT: Well then just wait until we are concluded.

MR. USIAK: I don't believe it's the Court's providence to make an objection to the State's placing the matter on the stet docket.

COURT: I'm not objecting. I don't have to grant the stet. Without the Court's granting, there is no stet.

MR. USIAK: Let me just add again, Your Honor, we have no objection to that.

COURT: [Assistant State's Attorney], if you don't want to prosecute this case, *nol-pros*[6] it, I'm not putting it on the stet docket.

MR. USIAK: If we may be excused, Your Honor?

COURT: No, you may not be excused.

MR. USIAK: I believe the case is concluded.

COURT: The case is not concluded, Mr. Usiak. It's not postponed, it's not stetted. Does the State wish to *nol-pros* the case [Assistant State's Attorney]?

---

6.  "A nolle prosequi, or nol pros, is an action taken by the State to dismiss pending charges when it determines that it does not intend to prosecute the defendant under a particular indictment." *State v. Huntley*, 411 Md. 288, 291 n. 4, 983 A.2d 160, 162 n. 4 (2009) (citing *Ward v. State*, 290 Md. 76, 83, 427 A.2d 1008, 1012 (1981)). Unlike a motion to stet a case, no motion requiring approval by the court of the State's decision to nol pros a matter is required.

[PROSECUTOR]: No Your Honor.

COURT: All right. Well, Mr. Usiak, what's your client's plea. [sic]

MR. USIAK: Your Honor, we believe that the case has been stetted. We have no objection. I believe—

COURT: The case has not been stetted, Mr. Usiak, unless you are rewriting the rules—

MR. USIAK: There are appropriate mechanisms—

COURT: Unless you are rewriting the rules, the Court's not granted the stet. So the State—the case is open—

MR. USIAK: It's not within the providence of the Court.

COURT: It is the Court's providence, Mr. Usiak. I think you better sit down and read the rules.

MR. USIAK: No, Your Honor I, I, we're leaving, Your Honor. Excuse me.

COURT: We are going to pass this case until you decide what to do. The case is passed. It is not off the docket, Mr. Usiak. Sir have a seat in the courtroom. Mr. Usiak, your client is staying; the case is not concluded. You can hear me. You're in contempt.

For the record, Counsel for the Defendant has walked out of the courtroom while the case was not concluded and simply passed for a decision; that's under Rule 15–203. This case is not over [Assistant State's Attorney].[7]

STATE: Thank you Your Honor.

After hearing other matters, the court resumed the Paz–Rubio case:

COURT: Is Mr. Ruben Paz–Rubio in the courtroom? Mr. Interpreter you want to call for him please [sic].

---

**7.** Usiak explained to us that his decision to assert his view of why the case was terminated and his departure from the courtroom was calculated to protect his client's ability to remain in the U.S. because a conviction on the charge might have resulted in collateral consequences impacting Paz–Rubio's immigration status. We express no view here on this explanation.

INTERPRETER: Senor Ruben Paz–Rubio [are you present (in Spanish) ]? (Pause) No response, Your Honor.

COURT: All right, thank you. For the record, this case was called earlier. Mr. Usiak, who represents the Defendant was rude and disrespectful, arguing with the Court over an issue regarding the Court's refusal to stet this case. The Court has found Mr. Usiak in contempt of court, direct contempt of court, for interrupting with the flow of the Court's judicial proceedings. Mr. Usiak has elected not to come back to court. The Court is sanctioning him in the amount of a two hundred and fifty dollar fine.

With regard to his client, who was told to stay in the courtroom because this case was not completed—Mr. Interpreter, did you tell Mr. Paz–Rubio that he was to stay?

INTERPRETER: I did tell him to stay Your Honor.

COURT: The Court is issuing a bench warrant for his arrest for not staying in the courtroom after being ordered to stay here until his case was finished. Bond is set in the amount of five hundred dollars. All right, thank you.

[PROSECUTOR]: Thank you Your Honor.

On 22 May 2008, the District Court judge entered a written order of contempt against Usiak. The Order stated merely that the court found him in direct contempt and referred to findings made on the transcript record of the 15 May 2008 proceedings.

Usiak appealed to the Circuit Court for Frederick County. After a hearing, the Circuit Court vacated the 22 May 2008 order of contempt on the ground that the order did not comply with Maryland Rule 15–203 [8] in that the order did not specify

---

**8.** Rule 15–203 provides the proper procedure for a direct contempt charge as follows:

(a) Summary imposition of sanctions. The court against which a direct civil or criminal contempt has been committed may impose sanctions on the person who committed it summarily if (1) the presiding judge has personally seen, heard, or otherwise directly perceived the conduct constituting the contempt and has personal knowledge of the identity of the person committing it, and (2) the

(1) whether the contempt is civil or criminal in nature and (2) the evidentiary facts known to the Court from the judge's own personal knowledge as to the conduct constituting the contempt and as to any relevant evidentiary facts not so known, the basis of the court's findings.

The Circuit Court remanded the matter to the District Court.

On 11 August 2008, almost three months after the original contempt order was entered, the District Court judge entered a second, corrected order of contempt against Usiak. The order stated that the judge found Usiak to be in direct criminal contempt of court and summarized the facts giving rise to the contempt charge:

On May 15, 2008, [I] attempted to conduct a trial in the underlying case. Upon the case being called for trial, the

contempt interrupted the order of the court and interfered with the dignified conduct of the court's business. The court shall afford the alleged contemnor an opportunity, consistent with the circumstances then existing, to present exculpatory or mitigating information. If the court summarily finds and announces on the record that direct contempt has been committed, the court may defer imposition of sanctions until the conclusion of the proceeding during which the contempt was committed.

(b) Order of contempt. Either before sanctions are imposed or promptly thereafter, the court shall issue a written order stating that a direct contempt has been committed and specifying:

(1) whether the contempt is civil or criminal,

(2) the evidentiary facts known to the court from the judge's own personal knowledge as to the conduct constituting the contempt, and as to any relevant evidentiary facts not so known, the basis of the court's findings,

(3) the sanction imposed for the contempt,

(4) in the case of civil contempt, how the contempt may be purged, and

(5) in the case of criminal contempt, (A) if the sanction is incarceration, a determinate term, and (B) any condition under which the sanction may be suspended, modified, revoked, or terminated.

(c) Affidavits. In a summary proceeding, affidavits may be offered for the record by the contemnor before or after sanctions have been imposed.

(d) Records. The record in cases of direct contempt in which sanctions have been summarily imposed shall consist of (1) the order of contempt; (2) if the proceeding during which the contempt occurred was recorded, a transcript of that part of the proceeding; and (3) any affidavits offered or evidence admitted in the proceeding.

State's attorney moved to have the matter placed on the STET docket. Mr. Usiak noted that his client did not object; however, the Court denied the State's motion and attempted to proceed with the trial. Mr. Usiak refused to proceed with the trial, incorrectly advising the Court that it did not have the authority deny [sic] the motion for STET. Despite the Court's advice to the contrary, Mr. Usiak persistently asserted that the Court could not deny the motion and requested to be excused. Twice, during the hearing, the Court admonished Mr. Usiak that he was being disrespectful. Six times, the Court advised Mr. Usiak that he could not be excused and that the hearing had not concluded. Notwithstanding, Mr. Usiak stated "No Your Honor I, I, we're leaving, Your Honor. Excuse Me." and [sic] proceeded to walk out of the courtroom. The Court called out to him as he was leaving, but he did not respond.

(Internal citations to the transcript omitted). The order imposed a sanction of $250, but stated that the sanction could be "suspended, modified or revoked" if Usiak were to make a written apology to the court.

Rather than pay the sanction or apologize, Usiak appealed once more to the Circuit Court. He also filed a motion to dismiss the contempt charges on the ground that the second order constituted a denial of due process and thus was against the notions of fundamental fairness. Further, he argued that a second, corrected order of contempt constituted impermissible double jeopardy. The Circuit Court denied the motion and affirmed the contempt order finding that "[t]he record, without a doubt, demonstrates a blatant disrespect of the trial court on the part of Norman Usiak. His words and actions occurred in the courtroom in the trial judge's presence and constituted a direct criminal contempt and amply support the trial judge's decision to impose summary sanctions."

Usiak next appealed to the Court of Special Appeals, which, on its motion, transferred the appeal to this Court pursuant to

Rule 8–132.[9] We granted Usiak's subsequent petition for a writ of certiorari, 409 Md. 413, 975 A.2d 875 (2009), to consider the following questions:

I. Did the Circuit Court for Frederick County err by refusing to consider the Petitioner's affidavit of defense when Maryland [Rule] 15–203 explicitly authorizes such a filing and Petitioner was otherwise denied the opportunity of presenting a defense (calling witnesses, etc.)?

II. Whether a judge has the authority to refuse to allow the State to stet a driving without a license charge, on personal policy grounds, when the State and the accused consent to the entry and the conditions upon the entry are non-objectionable and laudable?

III. Should [the District Court judge] have, personally, summarily declared Petitioner in contempt, after the matter was remanded and several months had transpired, and what should be the appropriate standard of review on appeal, if not *de novo?* [10]

For the reasons we shall explain, we shall reverse the judgment of the Circuit Court and hold that a defective, but

---

**9.** Rule 8–132 provides:

> If the Court of Appeals or the Court of Special Appeals determines that an appellant has improperly noted an appeal to it but may be entitled to appeal to another court exercising appellate jurisdiction, the Court shall not dismiss the appeal but shall instead transfer the action to the court apparently having jurisdiction, upon the payment of costs provided in the order transferring the action.

The Court of Special Appeals did not have appellate jurisdiction to consider the present case because it was an appeal from a judgement of the Circuit Court made in the exercise of appellate jurisdiction in reviewing the district court's judgment. A right of "appeal [does not exist] from a final judgment of a court entered or made in the exercise of appellate jurisdiction in reviewing the decision of the District Court...." Md.Code, Cts. & Jud. Proc. § 12–302(a) (1974 & 2006 Repl.Vol.).

**10.** Actually, Usiak filed two petitions in this Court in this case. After filing his original petition, he filed an "Amended/Corrected Petition for Writ of Certiorari." The "Amended/Corrected" Petition did not contain the third question presented for review which was contained only in his original petition. Ironically, we find that question to be the dispositive one and shall answer it alone.

intended, order of direct and summary criminal contempt, with summary sanctions, that fails to comply with Rule 15–203 may not be re-issued as corrected on remand. Accordingly, we do not reach the other questions.

## *ANALYSIS*

While the existing jurisprudence and rules governing the exercise of the contempt power are fulsome, they often seem not well understood or followed in application. Consequently, we shall reiterate here, as a sort of primer, many of those core principles. "The contempt power has stood as a sentry at the citadel of justice for a very long time. . . ." *State v. Roll and Scholl,* 267 Md. 714, 717, 298 A.2d 867, 870 (1973). The authority of a court to punish for contempt is "[o]ne weapon in the court's arsenal useful in defending its dignity." *Id.* "Without this power, the courts would be subject to the whim of any person who seeks to disrupt their proceedings. Consequently, it is beyond cavil that the power to hold a person in contempt is inherent in all courts as a principal tool to protect the orderly administration of justice and the dignity of that branch of government that adjudicates the rights and interests of the people." *Smith v. State,* 382 Md. 329, 337, 855 A.2d 339, 343 (2004) (citing *Ex Parte Maulsby,* 13 Md. 625, 635 (1859)).

The Courts and Judicial Proceedings Article of the Maryland Code, the Maryland Rules, and the common law of this State govern the procedures and power of contempt. *See* Md.Code, Cts. & Jud. Proc. § 1–202(a) ("A court may exercise its power to punish for contempt of court or to compel compliance with its commands in the manner prescribed by Title 15, Chapter 200 of the Maryland Rules."); *King v. State,* 400 Md. 419, 431, 929 A.2d 169, 176 (2007); *Smith,* 382 Md. at 338, 855 A.2d at 344. "We recognize two forms of contempt—direct and constructive—and two types of each form—criminal and civil." *Id.* "Criminal contempt serves a punitive function, while civil contempt is remedial or compulsory and must provide for purging." *Id.* A court may charge someone with

direct contempt if the "contempt [was] committed in the presence of the judge presiding in court or so near to the judge as to interrupt the court's proceedings." Md. Rule 15–202(b). A constructive contempt "means any contempt other than a direct contempt." Md. Rule 15–202(a).

The Rules permit the summary imposition of sanctions for direct contempt if

(1) the presiding judge has personally seen, heard, or otherwise directly perceived the conduct constituting the contempt and has personal knowledge of the identity of the person committing it, and (2) the contempt has interrupted the order of the court and interfered with the dignified conduct of the court's business.

Md. Rule 15–203(a). Although permitted by the Rules, a summary proceeding should be an exceptional case. *King*, 400 Md. at 433, 929 A.2d at 177. Summary procedures are appropriate where "the conduct of the alleged contemnor poses an open, serious threat to orderly procedures that instant. . . ." *Id.* Such procedures are necessary in such a circumstance because of "the need for *immediate* vindication of the dignity of the court." *Roll and Scholl*, 267 Md. at 733, 298 A.2d at 878 (emphasis supplied); *see also King*, 400 Md. at 433, 929 A.2d at 177; *Smith*, 382 Md. at 338, 855 A.2d at 344.

If a court chooses not to issue sanctions summarily, it shall, "reasonably promptly after [the contemptuous] conduct, . . . issue a written order specifying the evidentiary facts within the personal knowledge of the judge as to the conduct constituting the contempt and the identity of the contemnor." Md. Rule 15–204. In that event, Rule 15–204 provides further that "the proceeding shall be conducted pursuant to Rule 15–205 [11]

---

11. Rule 15–205 governs the procedures for constructive criminal contempt. It provides:'

 (a) Separate action. A proceeding for constructive criminal contempt shall be docketed as a separate criminal action. It shall not be included in any action in which the alleged contempt occurred.

or Rule 15–206,[12] whichever is applicable, and Rule 15–207 [13] in the same manner as a constructive contempt."

---

> (b) Who may institute. (1) The court may initiate a proceeding for constructive criminal contempt by filing an order directing the issuance of a summons or warrant pursuant to Rule 4–212.
> (2) The State's Attorney may initiate a proceeding for constructive criminal contempt committed against a trial court sitting within the county in which the State's Attorney holds office by filing a petition with that court.
> (3) The Attorney General may initiate a proceeding for constructive criminal contempt committed (A) against the Court of Appeals or the Court of Special Appeals, or (B) against a trial court when the Attorney General is exercising the authority vested in the Attorney General by Maryland Constitution, Art. V, § 3, by filing a petition with the court against which the contempt was allegedly committed.
> (4) The State Prosecutor may initiate a proceeding for constructive criminal contempt committed against a court when the State Prosecutor is exercising the authority vested in the State Prosecutor by Code, State Government Article, § 9–1201 et seq., by filing a petition with the court against which the contempt was allegedly committed.
> (5) The court or any person with actual knowledge of the facts constituting a constructive criminal contempt may request the State's Attorney, the Attorney General, or the State Prosecutor, as appropriate, to file a petition.
> (c) Appointment of prosecutor. If the proceeding is commenced by a court on its own initiative, the court may appoint the State's Attorney of the county in which the court sits, the Attorney General, or the State Prosecutor to prosecute the charge.
> (d) Contents; service. An order filed by the court pursuant to section (b)(1) of this Rule and a petition filed by the State's Attorney, the Attorney General, or the State Prosecutor shall contain the information required by Rule 4–202(a). The order or petition shall be served, along with a summons or warrant, in the manner specified in Rule 4–212 or, if the proceeding is in the Court of Appeals or Court of Special Appeals, in the manner directed by that court.
> (e) Waiver of counsel. The provisions of Rule 4–215 apply to constructive criminal contempt proceedings.
> (f) Jury trial. The provisions of Rule 4–246 apply to constructive criminal contempt proceedings.

12. Rule 15–206 governs the procedures for constructive civil contempt. It provides:

> (a) Separate action. A proceeding for constructive criminal contempt shall be docketed as a separate criminal action. It shall not be included in any action in which the alleged contempt occurred.
> (b) Who may institute. (1) The court may initiate a proceeding for constructive criminal contempt by filing an order directing the issuance of a summons or warrant pursuant to Rule 4–212.

(2) The State's Attorney may initiate a proceeding for constructive criminal contempt committed against a trial court sitting within the county in which the State's Attorney holds office by filing a petition with that court.

(3) The Attorney General may initiate a proceeding for constructive criminal contempt committed (A) against the Court of Appeals or the Court of Special Appeals, or (B) against a trial court when the Attorney General is exercising the authority vested in the Attorney General by Maryland Constitution, Art. V, § 3, by filing a petition with the court against which the contempt was allegedly committed.

(4) The State Prosecutor may initiate a proceeding for constructive criminal contempt committed against a court when the State Prosecutor is exercising the authority vested in the State Prosecutor by Code, State Government Article, § 9–1201 et seq., by filing a petition with the court against which the contempt was allegedly committed.

(5) The court or any person with actual knowledge of the facts constituting a constructive criminal contempt may request the State's Attorney, the Attorney General, or the State Prosecutor, as appropriate, to file a petition.

(c) Appointment of prosecutor. If the proceeding is commenced by a court on its own initiative, the court may appoint the State's Attorney of the county in which the court sits, the Attorney General, or the State Prosecutor to prosecute the charge.

(d) Contents; service. An order filed by the court pursuant to section (b)(1) of this Rule and a petition filed by the State's Attorney, the Attorney General, or the State Prosecutor shall contain the information required by Rule 4–202(a). The order or petition shall be served, along with a summons or warrant, in the manner specified in Rule 4–212 or, if the proceeding is in the Court of Appeals or Court of Special Appeals, in the manner directed by that court.

(e) Waiver of counsel. The provisions of Rule 4–215 apply to constructive criminal contempt proceedings.

(f) Jury trial. The provisions of Rule 4–246 apply to constructive criminal contempt proceedings.

**13.** Rule 15–207 provides for further proceedings for constructive contempt:

(a) Consolidation of criminal and civil contempts. If a person has been charged with both constructive criminal contempt pursuant to Rule 15–205 and constructive civil contempt pursuant to Rule 15–206, the court may consolidate the proceedings for hearing and disposition.

(b) When judge disqualified. A judge who enters an order pursuant to Rule 15–204 or who institutes a constructive contempt proceeding on the court's own initiative pursuant to Rule 15–205(b)(1) or Rule 15–206(b)(1) and who reasonably expects to be called as a witness at any hearing on the matter is disqualified from sitting at the hearing unless (1) the alleged contemnor consents, or (2) the alleged contempt consists of a failure to obey a prior order or judgment in a civil action or a "judgment of restitution" as defined in Code, Criminal Procedure Article, § 11–601(g).

(c) Hearing. (1) Contempt of appellate court. Where the alleged contemnor is charged with contempt of an appellate court, that court, in lieu of conducting the hearing itself, may designate a trial judge as a special master to take evidence and make recommended findings of fact and conclusions of law, subject to exception by any party and approval of the appellate court. (2) Failure of alleged contemnor to appear. If the alleged contemnor fails to appear personally at the time and place set by the court, the court may enter an order directing a sheriff or other peace officer to take custody of and bring the alleged contemnor before the court or judge designated in the order. If the alleged contemnor in a civil contempt proceeding fails to appear in person or by counsel at the time and place set by the court, the court may proceed ex parte.

(d) Disposition—Generally. (1) Applicability. This section applies to all proceedings for contempt other than proceedings for constructive civil contempt based on an alleged failure to pay spousal or child support.

(2) Order. When a court or jury makes a finding of contempt, the court shall issue a written order that specifies the sanction imposed for the contempt. In the case of a civil contempt, the order shall specify how the contempt may be purged. In the case of a criminal contempt, if the sanction is incarceration, the order shall specify a determinate term and any condition under which the sanction may be suspended, modified, revoked, or terminated.

(e) Constructive civil contempt—Support enforcement action.

(1) Applicability. This section applies to proceedings for constructive civil contempt based on an alleged failure to pay spousal or child support, including an award of emergency family maintenance under Code, Family Law Article, Title 4, Subtitle 5.

(2) Petitioner's burden of proof. Subject to subsection (3) of this section, the court may make a finding of contempt if the petitioner proves by clear and convincing evidence that the alleged contemnor has not paid the amount owed, accounting from the effective date of the support order through the date of the contempt hearing.

(3) When a finding of contempt may not be made. The court may not make a finding of contempt if the alleged contemnor proves by a preponderance of the evidence that (A) from the date of the support order through the date of the contempt hearing the alleged contemnor (i) never had the ability to pay more than the amount actually paid and (ii) made reasonable efforts to become or remain employed or otherwise lawfully obtain the funds necessary to make payment, or (B) enforcement by contempt is barred by limitations as to each unpaid spousal or child support payment for which the alleged contemnor does not make the proof set forth in subsection (3)(A) of this section. (4) Order. Upon a finding of constructive civil contempt for failure to pay spousal or child support, the court shall issue a written order that specifies (A) the amount of the arrearage for which enforcement by contempt is not barred by limitations, (B) any sanction imposed for the contempt, and (C) how the contempt may be purged. If the contemnor does not have the present ability to purge the contempt, the order may include directions that the contemnor make specified payments on the arrearage at future times and per-

■ Petitioner makes several arguments regarding the second order of contempt by the District Court. We shall address first (and ultimately only) Petitioner's argument that it was improper for the District Court to enter a second, corrected order of direct criminal contempt with summary sanctions approximately three months after the alleged contemptuous conduct occurred. Rule 15–203(b) provides that "[e]ither before sanctions are imposed or promptly thereafter, the court shall issue a written order stating that a direct contempt has been committed...." In *King v. State*, the contemnor, an attorney, failed to appear in court for her client's scheduled trial date in a criminal case. The trial judge chose not to impose summary sanctions and issued a contempt show cause order to the attorney, thus treating the conduct as constructive criminal contempt. Subsequently, at a hearing on the contempt charge, the court vacated the previous order and indicated that it found the attorney in direct criminal contempt. On appeal, we held that because the trial judge "did not summarily impose sanctions for King's direct criminal contempt, Maryland Rule 15–204 governed the procedure for adjudication of the direct contempt and the imposition of sanctions." 400 Md. at 441–42, 929 A.2d at 182. We opined that

> following a direct contempt, the court may defer the imposition of sanctions until the conclusion of the proceeding during which the contempt was committed, *only if* the court "summarily finds and announces on the record that direct contempt was committed." The plain language of the rule contemplates that summary imposition of sanctions should occur contemporaneously with the proceeding in which the direct contempt occurred.

*Id.* at 441, 929 A.2d at 182 (emphasis in original) (quoting Md. Rule 15–203). We explained further that, in the absence of summary proceedings, "Rule 15–204 requires that the direct contempt shall be treated like a constructive contempt for

---

form specified acts to enable the contemnor to comply with the direction to make payments.

purposes of adjudication and disposition." *Id.* Although under Rule 15–203 deferral of a summary sanction until a later time in the underlying proceeding does not affect the summary nature of the sanction, we explained that the time frame contemplated by the Rule is a de minimis amount of time. *Id.* at 442, 929 A.2d at 182–83. The reason that the Rules treat a direct contempt as a constructive contempt when the court does not proceed summarily is grounded in the purpose behind the allowance of summary proceedings. "The imposition of sanctions weeks after the contumacious conduct ignores the purpose for which sanctions are imposed summarily, i.e., to vindicate the court so that 'a court [will] not be at the mercy of the obstreperous and uncouth.'" *Id.* at 442, 929 A.2d at 183 (alteration in original) (quoting R. Goldfarb, *The Contempt Power* 306 (1963)).

In *Smith v. State,* 394 Md. 184, 905 A.2d 315 (2006), the trial judge held Smith in direct criminal contempt for refusing to testify in a criminal case. Two days after the conclusion of the case, the trial judge conducted a separately docketed hearing and imposed upon Smith sanctions for direct criminal contempt. On a writ of certiorari to this Court, Smith argued that "the trial judge did not summarily impose sanctions following her determination that he was guilty of direct criminal contempt and that, therefore, his contempt conviction must be vacated because the trial court failed to comply with the applicable Maryland Rules governing contempt proceedings." *Id.* at 198, 905 A.2d at 323. We noted that the Committee Note to Rule 15–203 states:

> Sanctions may be imposed immediately upon the finding of the contempt, or, in the court's discretion, may be deferred to a later time in the proceeding. Deferral of a sanction does not affect its summary nature. The sanction remains summary in nature in that no hearing is required; the court simply announces and imposes the sanction.

We observed that the "term 'summary' generally connotes an immediate action undertaken without following the usual formal procedures." *Id.* at 215, 905 A.2d at 333 (citing *Black's Law Dictionary* 1476 (8th ed.2004)). We concluded that "the

fact that the court held an independently docketed proceeding in which to dispense sanctions is entirely inconsistent with the concept of summary proceedings. Moreover, the trial judge engaged in an involved colloquy with Smith, permitted his attorney to present a mitigating argument, and solicited sentencing recommendations from the State and Smith's counsel." *Smith,* 394 Md. at 215, 905 A.2d at 323. Accordingly, we held that "the trial judge erred in characterizing the imposition of sanctions in the present case as summary in nature and should have followed the procedures delineated in Maryland Rules 15–204, 15–205, 15–206, and 15–207." *Id.* at 216, 905 A.2d at 333.

Here, the asserted contemptuous conduct occurred on 15 May 2008. The District Court judge issued the initial order of contempt on 22 May 2008. The Circuit Court vacated the defective order and, on remand, the District Court judge issued a revised, new order on 11 August 2008. Similar to the delayed imposition of sanctions in *King* and the independent docketing of the contempt proceeding in *Smith,* the almost three-month delay between the original order of contempt and the revised order is inconsistent with the nature of a summary contempt proceeding. As noted *supra,* Rule 15–203 permits the court "to defer imposition of sanctions until the conclusion of the proceeding during which the contempt was committed." The length of time the court may defer sanctions, however, is de minimis and typically should be no later than the end of the proceeding during which the triggering conduct occurred. Three months, in these circumstances, is not de minimis. Direct criminal contempt with summary imposition of sanctions is a relatively rare criminal offense where the judge finds a contemnor guilty upon witnessing the conduct and impose a sanction immediately. The imperative to vindicate the dignity or the efficient operations of the court almost three months after the misconduct occurs diminishes greatly the immediacy of the justification for summary sanctions. An order of contempt entered almost three months after the fact "lack[s] the hallmarks of summary imposition of sanctions under Maryland Rule 15–203(a)." *Smith,* 394 Md. at 215, 905 A.2d at 333. As

we explained in *King,* "proceeding summarily at a later date, in effect, circumvents compliance with Maryland Rules 15–204 and 15–205 and, therefore, is improper." 400 Md. at 445, 929 A.2d at 184. Accordingly, we hold that the Circuit Court erred when it affirmed the second contempt order.

The unique facet of contempt law that permits summary imposition of sanctions also militates against a judge having two bites at the contempt apple. In effect, in circumstances such as occurred here, where the trial judge believes summary action is required, he or she must get it right the first time. The first order was deficient because it failed to specify whether the contempt was criminal or civil or to marshal the facts that formed the basis of the finding of contempt. By the time the District Court entered the second order, the justification for the summary nature of the contempt order had dissipated greatly. There was no longer an immediate need to vindicate the dignity or efficient operation of the court.[14] As a

---

**14.** The Dissent takes exception to the Majority's holding in this regard. The Dissent opines that it is "unrealistic" for a trial judge to enter immediately the contempt order, as he or she is required to do by Maryland Rule 15–203. Furthermore, the Dissent concludes that it is "unfair" to prohibit the judge from entering a corrected contempt order after he or she failed to enter a corrected order the first time. Although the Dissent states that it disagrees with the Majority's holding, it actually takes issue with the plain language of Rule 15–203 itself, which provides that *"[e]ither before sanctions or promptly thereafter are imposed,* the court shall issue a written order stating that a direct contempt has been committed and specifying" the facts giving rise to the contempt finding. (Emphasis supplied). The Rule plainly contemplates that the imposition of sanctions shall be imposed in rapid succession to the contumacious conduct. As discussed *supra,* the Rule states that the court "may defer imposition of sanctions," but shall do so before the conclusion of the proceedings. A short deferral of sanctions, exercised within the court's sound discretion, does not affect the summary nature of the proceedings. In contrast, imposing a corrected order almost three months after the proceeding had concluded vitiates the summary nature of the sanctions.

Moreover, the dissenting opinion's reliance on *Kandel v. State,* 252 Md. 668, 250 A.2d 853 (1969), is injected inaptly into any analysis of the iteration of the Rule as it existed at the relevant times of the present case. We decided *Kandel* under the predecessor to the current rule governing the summary imposition of sanctions for direct criminal

result, there should not have been a remand of this case for further proceedings. "Further proceedings in the present case . . . would be inconsistent with the purpose of empowering the trial court to sanction direct contempt, which is to 'assur[e] the efficiency and dignity of the judiciary.'" *Smith,* 394 Md. at 216, 905 A.2d at 334 (alteration in original) (quoting *Roll and Scholl,* 267 Md. at 726, 298 A.2d at 875).[15] Therefore, we shall reverse the judgment of the Circuit Court and remand with directions to vacate the contempt order and dismiss the contempt action.

**JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY REVERSED AND CASE REMANDED WITH DIRECTIONS TO VACATE THE CONTEMPT ORDER OF 11 AUGUST 2008 AND DISMISS THE ACTION. COSTS TO BE PAID BY FREDERICK COUNTY.**

BATTAGLIA, MURPHY, and BARBERA, JJ., Dissent.

---

contempt, Maryland Rule P3 b (1967) and is, thus, inapplicable to the disposition of the present case. Rule P3 b provided that

> [w]here a direct contempt is committed, the court shall sign a written order to that effect. The order shall recite the facts, be signed by the judge and entered of record. The order shall state which of the facts were known to the court of its own knowledge and as to any facts not so known, the basis for the court's finding with respect thereto.

In contrast to Rule 15–203, Rule P3 b did not contain a requirement stating a timing consideration by which sanctions must be imposed. Thus, we held that the delay in *Kandel* from May to November 1968 did not prejudice the contemnor. 252 Md. at 670, 250 A.2d at 854. When we adopted Rule 15–203, however, we found it appropriate to include a timing requirement. Accordingly, it is clear from the plain language of the Rule that a delay such as occurred in *Kandel* no longer would be acceptable.

**15.** The Court of Special Appeals reached a different conclusion in *Thomas v. State,* 99 Md.App. 47, 635 A.2d 71 (1994). In *Thomas,* the trial court failed to comply with Maryland Rule P3, a predecessor to the current rules of contempt procedure, by failing to enter a written order reciting the facts and the basis of the court's judgment of contempt. The intermediate appellate court held that was error, but determined that it was proper to vacate and remand the judgment of contempt with instructions for further proceedings consistent with its opinion. 99 Md.App. at 58–59, 635 A.2d at 77. We here express our disfavor with *Thomas* to the extent it is inconsistent with the holding here.

Dissenting Opinion by MURPHY, J., which BATTAGLIA and BARBERA, JJ., Join.

Although I agree that, "where the trial judge believes summary action is required [to punish a direct criminal contempt], he or she must get it right the first time," I disagree with the majority's conclusion that "it" is the written order required by Md. Rule 15–203(b). What the trial judge must "get right" is the *summary action* permitted by Md. Rule 15–203(a), and the record in the case at bar proves beyond any doubt that—as Appellant contumaciously walked out of the courtroom after being told to remain—the District Court got it right. Nothing whatsoever in the history of Md. Rules 15–203 or 7–116 supports the majority's holding that a timely—but technically incorrect—order of direct criminal contempt cannot be corrected on remand. Because the issuance of a corrected order simply does not violate the prohibition "against a judge having two bites at the contempt apple," this case should either be affirmed on its merits or remanded to the Circuit Court with directions that the appeal be dismissed.

This Court should hold that Appellant was not entitled to a trial *de novo* in the Circuit Court. In *Harper v. State*, 312 Md. 396, 540 A.2d 124 (1988), while holding that a Circuit Court jury trial *de novo* is available to defendants who have noted an appeal from District Court orders finding them in direct criminal contempt, this Court stated:

This Court could, under its constitutional rule-making authority over matters of practice and procedure, expand the category of cases where appeals from the District Court would be on the record, as long as the rights to jury trial were preserved.

*Id.* at 408, 540 A.2d at 130. In a Rules Order that was entered on March 30, 1993, and took effect on July 1, 1993, this Court adopted Rule 7–102, which, in pertinent part, provided:

**(a) On the Record.** An appeal shall be heard on the record made in the District Court in the following cases:
* * *

(4) an appeal from an order or judgment of direct criminal contempt if the sentence imposed by the District Court was less than 90 days' imprisonment.

Based upon the presumption that the General Assembly became aware of this rule, and the fact that the General Assembly has not amended CJ § 12–401, Appellant was not entitled to a trial *de novo*. He was, however, required to comply with Md. Rule 7–113, which provides as follows:

Rule 7–113. Appeals heard on the record.

(a) Scope. This Rule applies only to appeals heard on the record of the District Court.

(b) Filing of transcript. (1) Unless a copy of the transcript is already on file, the appellant, within 10 days after the date the first notice of appeal is filed, shall order in writing from the clerk of the District Court a transcript containing:

(A) a transcription of (i) all the testimony or (ii) that part of the testimony that the parties agree, by written stipulation filed with the clerk of the District Court, is necessary for the appeal; and

(B) a transcription of any other proceeding relevant to the appeal that was recorded pursuant to Rule 16–504.

(2) The clerk of the District Court shall cause the original transcript to be filed promptly for inclusion in the record, and shall advise the appellant when the transcript has been filed. The appellant shall promptly serve a copy on the appellee.

(c) Notice by clerk. Upon the filing of the record, the clerk of the circuit court shall enter the appeal on the docket and shall send to the parties a notice stating the date the appeal was entered on the docket and the assigned docket reference. The notice shall also advise the appellant that a memorandum complying with Rule 7–113 must be filed within 30 days after the date the appeal was entered on the docket.

(d) Memorandum and response. (1) The appellant shall file a memorandum in opposition to the decision of the District Court within 30 days after the date the appeal was entered

on the docket or as otherwise ordered by the court. The appellee may file a response within 15 days after service of the appellant's memorandum, but in no event later than five days before the date of argument, if argument has been scheduled.

(2) In addition to otherwise complying with Rule 1–301, a memorandum or response shall be typewritten or printed, shall be double spaced, and shall not exceed ten pages in length. The appellant's memorandum shall contain (A) a statement of the questions presented for review, (B) a concise statement of the facts material to a determination of the questions presented, and (C) argument in support of the appellant's position, stating the grounds for the relief sought and the authorities in support of each ground. The appellee's response shall contain argument in support of the decision of the District Court, stating the grounds for affirmance and the authorities in support of each ground.

(3) If an appellant fails to file a memorandum within the time prescribed by this Rule, the circuit court may dismiss the appeal if it finds that the failure to file or the late filing caused prejudice to the moving party. An appellee who fails to file a memorandum within the time prescribed by this Rule may not present argument except with the permission of the court.

(e) Oral argument. A party desiring oral argument shall request it in the memorandum or response under the heading "Request for Oral Argument". Unless oral argument is requested by a party or ordered by the circuit court, the appeal shall be decided without oral argument.

(f) Scope of review. The circuit court will review the case on both the law and the evidence. It will not set aside the judgment of the District Court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the District Court to judge the credibility of the witnesses.

(g) Disposition. (1) As to each party to an appeal, the circuit court shall by order dispose of an appeal in one of the following ways:

(A) dismiss the appeal pursuant to Rule 7–114;

(B) affirm the judgment;

(C) vacate or reverse the judgment;

(D) modify the judgment;

(E) remand the action in accordance with subsection (2) of this section; or

(F) an appropriate combination of the above.

(2) If the circuit court concludes that the substantial merits of a case will not be determined by affirming, reversing, or modifying the judgment, or that justice will be served by permitting further proceedings, the court may remand the case to the District Court. In the order remanding a case, the circuit court shall state the purpose for the remand. The order of remand and the opinion upon which the order is based are conclusive as to the points decided. Upon remand, the District Court shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the circuit court.

(h) Opinion. In every appeal, the circuit court shall render a concise opinion, which shall be reduced to writing and filed with the clerk.

From my review of the record, Appellant did not comply with requirements of sections (b) and (d) of Md. Rule 7–113. I would therefore direct that the Circuit Court dismiss this appeal.

Assuming that the Circuit Court was required to reach the merits, however, it is clear to me that the Circuit Court was expressly authorized by Md. Rule 7–113(g) to do precisely what it did: remand to the District Court for entry of an order that complied with the requirements of Md. Rule 15–203(b). Nothing in the history of Md. Rule 7–113(g) supports the conclusion that a District Court's judgment of direct criminal contempt cannot be vacated and remanded for further proceedings. Moreover, such a conclusion is directly contrary to federal precedent.

In *Buffington v. Baltimore County*, 913 F.2d 113 (4th Cir.1990), while vacating "civil" contempt judgments entered in the United States District Court for the District of Maryland against two lawyers who violated their obligation to comply with discovery orders, the United States Court of Appeals for the Fourth Circuit stated:

> There was no clear error in the district court's subsidiary fact-findings that [the lawyers] had possession of [certain] witness statements ... and that the refusal to apprise the Buffingtons of those critical statements permitted drawing the "weighty inference of knowing concealment."
>
>                \* \* \*
>
> Any monetary sanction the court might impose on remand without reinstituting criminal proceedings must be civil in character[.] ... Any reinstituted criminal contempt proceedings must of course comply with the requisites of the Federal Rules of Criminal Procedure and the constitutional protections afforded defendants in such proceedings.
>
> For the foregoing reasons, we ... vacate and remand the contempt sanctions against [the attorneys].

*Id.* at 135–36. *Buffington* was cited with approval in *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812 (4th Cir.2004), in which the Fourth Circuit vacated a judgment of contempt and remanded for further proceedings at which the United States District Court for the Western District of North Carolina would be required to apply "the procedural safeguards necessary prior to the imposition of criminal penalties." *Id.* at 822–23.

I also disagree with the majority's conclusion that there should not have been a remand because "[t]here was no longer an immediate need to vindicate the dignity or efficient operation of the [District Court]." The conclusion that the second order was entered "too late" to vindicate the dignity of the court cannot be reconciled with this Court's holding in *Kandel v. State*, 252 Md. 668, 250 A.2d 853 (1969). In that case, on March 12, 1969, this Court affirmed "an order of ... the Circuit Court for Baltimore County finding [the appellant] in

contempt for failing punctually to appear at the trial of an accused whom he represented, and imposing a fine of $150.00," even though the Circuit Court (1) announced its finding and punishment in open court on May 27, 1968 (the day of trial), but (2) did not sign the order of contempt, then required by Md. Rule P3(b), until November 5, 1968, and (3) did not file that order until November 18, 1968. *Id.* at 669–70, 250 A.2d at 853–854.

While it is true that former Md. Rule P3 (b) did not expressly require that the trial court issue a written order "either before sanctions are imposed or promptly thereafter," the absence of that express requirement was of no consequence to the holding in *Kandel*. Even though the order required by Md. Rule P3(b) was not filed until after Mr. Kandel noted his appeal, this Court affirmed the conviction (over nine months after the contempt occurred) on the ground "that Mr. Kandel was not prejudiced by the delayed compliance with Rule P3 b." *Id.* at 670, 250 A.2d at 854.

Moreover, Md. Rule 1–201(a), in pertinent part, provides:

When a rule, by the word "shall" or otherwise, mandates or prohibits conduct, the consequences of noncompliance are those prescribed by these rules or by statute. If no consequences are prescribed, the court may compel compliance with the rule or may determine the consequences of the noncompliance in light of the totality of the circumstances and the purpose of the rule.

No consequences of noncompliance with the "prompt issuance" requirement in Md. Rule 15–203(b) are prescribed by any rule other than Md. Rule 7–113(g), or by statute. It is clear that the purpose of Md. Rule 15–203(b) is not to place busy trial judges "at the mercy of the obstreperous," but rather to enable the appellate court to determine whether a contempt has been committed. *Kandel, supra,* 252 Md. at 670, 250 A.2d at 854. The "totality of the circumstances" analysis should obviously include a determination of (1) why the order was not issued "promptly," and (2) whether the appellant was prejudiced in any way by the delayed compli-

ance with the rule.  In the case at bar, the first order was entered one week after the contempt occurred.  As was the situation in *Kandel*, Appellant is unable to show that he was prejudiced by the delayed compliance.

The "totality of the circumstances" analysis should also focus upon the impact of the contumacious conduct.  If Appellant had contumaciously walked out of a courtroom while representing a party in a civil case, the trial court would not have been prohibited from continuing the trial.  In the case at bar, however, Appellant contumaciously walked out of the courtroom while representing a criminal defendant who had a constitutional right to be represented by counsel.  Under these circumstances, if we do not direct that the Circuit Court dismiss this appeal, we should certainly affirm the judgment of the Circuit Court on the ground that the record shows beyond any doubt that (in the words of the Circuit Court) "[Appellant's] words and actions occurred in the courtroom in the trial judge's presence and constituted a direct criminal contempt[.]"

Judges BATTAGLIA and BARBERA have authorized me to state that they join this dissenting opinion.